S.I.R.P.R.

FILED - GR
April 11, 2025 11:10 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW    SCANNED BY: JW / 4-11

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**1:25-cv-400**
**Paul L. Maloney**
**United States District Judge**

Case Action Number _____

**PARENT DOE**, individually
and on behalf of their minor child, **STUDENT DOE**,
Plaintiffs,

v.

**INTERLOCHEN CENTER FOR THE ARTS** d/b/a INTERLOCHEN ARTS ACADEMY,
Defendant.

---

## COMPLAINT AND REQUEST FOR TEMPORARY RESTRAINING ORDER AND
## PRELIMINARY INJUNCTION

---

### INTRODUCTION

1.      This is a breach of contract, civil rights and tort action seeking emergency injunctive relief and damages for unlawful disability discrimination, retaliation, and educational exclusion in violation of federal law, as well as state common law claims.

2.      Plaintiff Student Doe is a minor child with diagnosed disabilities, including Sensory Processing Disorder, ADHD, and Generalized Anxiety Disorder.

3.      Throughout the 2024–2025 academic year, Student Doe's parent, Plaintiff Parent Doe, actively and consistently advocated for Student Doe's legal rights under Section 504 and the Americans with Disabilities Act (ADA), requesting medically necessary and federally protected disability accommodations.  Parent Doe lives with a communication disability which has been known to Defendant since July 2024.   Parent Doe has requested telephone

communication instead of emails as an accommodation for her own disability, which Defendant frequently ignores.

4.     Defendant Interlochen Center for the Arts ("Interlochen") operates a prestigious residential arts academy with tuition in excess of $75,000 annually. Student Doe is presently enrolled for the 2024-2025 school year, is contracted for enrollment for the 2025–26 school year, and attendance is central to Student Doe's postsecondary trajectory and medical plan. Interlochen's enrollment contract is with Parent Doe, with Student Doe the intended beneficiary.

5.     On April 9, 2025 — the day after Parent Doe reported health and safety concerns to the U.S. Department of Education's Office for Civil Rights (OCR) — Interlochen sent an email to Parent Doe purporting to "rescind" Student Doe's "re-enrollment offer" for the 2025-2026 school year, citing vague concerns about written "communication" with Parent Doe, and no misconduct whatsoever by Student Doe.  The email neglected to mention or consider Parent Doe's requests for telephone communication instead of the massive quantities of emails Defendant regularly sends to Parent Doe.  The telephone accommodation is regularly denied.  In fact, President Trey Devey and several others did in fact deny Parent Doe's requests for telephone calls instead of emails, as disability communication accommodations, during the week cited by his email.

6.     Parent Doe, however, had already accepted the re-enrollment offer in writing months before this.

7.     The offer cannot be rescinded, because the parties already have a contract for the 2025-2026 enrollment.  Interlochen's purported "rescission" of its offer is at this point an anticipatory repudiation breach of that contract.

8.    Defendant's actions amount to disability discrimination, retaliation under federal disability law, and breach of its contractual and ethical obligations to the student for the reasons herein.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 28 U.S.C. § 1332 (diversity jurisdiction), as Plaintiff is a resident of Iowa and Defendant is located in Michigan, and the amount in controversy exceeds $75,000, as the contracted tuition alone is $78,725.

10.    Venue is proper under 28 U.S.C. § 1391(b), as the events giving rise to the claims occurred in this District and the Defendant is headquartered here.

## PARTIES

11.    Plaintiff PARENT DOE is the parent and legal guardian of minor Plaintiff STUDENT DOE.  Parent Doe is a resident of Iowa.

12.    Plaintiff STUDENT DOE is a minor with disabilities as defined by the ADA and Section 504 and is a fully enrolled student at Interlochen Arts Academy for the current 2024-2025 academic year who was also accepted and contracted for enrollment for the 2025-2026 academic year.

13.    Defendant INTERLOCHEN CENTER FOR THE ARTS ("Interlochen") is a Michigan nonprofit corporation operating Interlochen Arts Academy, a residential school serving students nationwide and worldwide, as well as Interlochen Arts Camp, its summer camp program. Defendant receives federal funding and is subject to both Section 504 and Title III of the ADA.

## FACTUAL ALLEGATIONS

14.    Student Doe has documented disabilities including SPD, ADHD, and anxiety.

15.    Student Doe has a 4.0 grade point average and has received academic accommodations through an offered IEP and a 504 Plan, including double time, sensory breaks, and environmental modifications.

16.    Student Doe was approved for testing accommodations by both the College Board and ACT, including extended time, breaks for medication, and multi-day testing.

17.    Parent Doe engaged in repeated, well-documented advocacy throughout the 2024–2025 academic year, including direct communication with school administrators and outside testing agencies to ensure compliance with federal disability laws.

18.    Despite this, the school's internal disability services officer Michael Kern failed to submit complete or accurate accommodation requests to the College Board, as recently as April 2, 2025.

19.    After exhausting efforts to work collaboratively with the school, Parent Doe filed a formal OCR complaint with the U.S. Department of Education on March 31, 2025, after Interlochen refused housing accommodations based on Student Doe's doctor's order that Student Doe be separated from a roommate who was suicidal, cutting, spilling bodily fluids on the floor of the shared room, and had been on suicide probation from Interlochen – all of which caused Student Doe to worry that the roommate would die in their shared room.

20.    On April 8, 2025, Parent Doe amended the OCR complaint to add increasing concerns for Student Doe's safety after Interlochen refused to treat Student Doe in its clinic for ear pain, throat pain, and dizziness.  The very next day – on April 9, 2025 – Interlochen

abruptly "rescinded" Student Doe's enrollment for the 2025–2026 academic year, citing concerns about the "tone" of Parent Doe's advocacy — not any misconduct by the student.

21.    This decision was made with full awareness of the student's documented disabilities, the parent's protected rights to advocate, and the pending OCR complaint.

22.    At the time of the rescission, Student Doe's tuition for the upcoming year—in excess of $75,000—had already been committed for financial aid confirmation and was vital to her educational and therapeutic continuity.

23.    Defendant's actions constitute retaliation for protected activity, discrimination on the basis of disability, breach of contract, and infliction of emotional harm.

24.    Prior to the purported "rescission," Parent Doe had formally accepted the offer of enrollment for Student Doe's 2025–26 academic year at Interlochen Arts Academy. This acceptance was confirmed in writing and reflected mutual assent to the terms of enrollment, thereby forming a binding contract.

25.    Interlochen's assertion that the offer can be "rescinded" is inaccurate and misleading. A contract had already been formed, and Student Doe's spot was secured, subject only to the performance of routine administrative steps such as confirmation of financial aid amounts and assignment of housing.

26.    In his written communication dated April 9, 2025, Interlochen's President Trey Devey explicitly acknowledged that this decision "may be both surprising and upsetting." This demonstrates Defendant's awareness that its actions would inflict emotional distress on Student Doe, which they did.

27.    Parent Doe repeatedly raised concerns with Interlochen leadership as early as July 2024 that the Academy was failing to comply with its obligations under Section 504 of the

Rehabilitation Act and the Americans with Disabilities Act (ADA). These concerns included the school's refusal to formalize accommodations in writing, its lack of procedural safeguards, and its failure to ensure faculty-wide compliance with required supports. It wasn't until Parent Doe also shared these concerns with OCR that Interlochen decided to expel Student Doe.

28.    For months, Parent Doe had expressed that these systemic failures likely affected other students with disabilities, not just Student Doe, and urged Interlochen to evaluate its policies and practices to ensure lawful compliance for all disabled children in its academy and camp programs. Instead of addressing concerns for the disabled children in its academy and camps, Interlochen's letter explicitly states its decision to exclude disabled Student Doe was "in the best interest of the entire Interlochen community," indicating a broader institutional motive to suppress disability-related advocacy and to exclude disabled individuals from its programs.

29.    Defendant's own Student Handbook admits it does not implement 504 plans, even though it is subject to Section 504.

30.    Furthermore, its designated disability services coordinator, Michael Kern, has refused to document accommodations in writing, undermining any assurance that faculty are aware of or required to comply with legally mandated supports. On or about February 1, 2025, Plaintiff requested written confirmation of accommodations. Michael Kern refused, stating that he would not document 504 supports.

31.    In early July 2024, before the current school year had started, Parent Doe endeavored to collaborate with Interlochen's student support services. Interlochen staff member Micah Wittmer contacted Parent Doe and offered to create a "learning plan" to support Student Doe. Months later, however, Michael Kern intervened and insisted that no plans would be

6

implemented. Micah Wittmer then ceased communication with Student Doe and no learning plan was provided. This shows a pattern of internal suppression of disability accommodations, and supports Plaintiffs' claims of institutional retaliation and negligence.

32.    In a written email dated October 18, 2024, Michael Kern, Interlochen's designated disability services coordinator, stated that he believed accommodations for anxiety are "a crutch," and that Student Doe didn't need accommodations, despite having a 504 Plan and an IEP from the public middle school endorsing accommodations. This statement directly reflects a discriminatory mindset toward disabled students and helps explain his consistent refusal to formalize or support accommodations. This conduct supports Plaintiffs' claims under the ADA, Section 504, and for intentional infliction of emotional distress.

33.    In early April 2025, Camille Colatosti, the Interlochen Provost, who is not a licensed medical provider, instructed Interlochen staff that Parent Doe could not contact teachers or medical professionals directly, requiring all communication to go through Colatosti. In at least one instance, Colatosti directed medical staff to return Student Doe to class rather than perform an indicated medical intervention (ear swabbing) when Student Doe experienced ear pain, throat pain, and dizziness. As a result, Student Doe's untreated throat and ear infections worsened. Student Doe reported increased pain, auditory sensitivity, and inability to sleep. Parent Doe ultimately took Student Doe to urgent care on April 4, 2025, who diagnosed strep throat and bilateral ear infection. This interference with medically necessary care by Colatosti resulted in physical and emotional harm and supports claims of medical negligence and intentional interference with Student Doe's access to care.

34.     Plaintiff Parent Doe accepted the enrollment offer in writing, submitted all required paperwork, and engaged in preparations for the 2025–2026 academic year, thereby finalizing a binding contract with Interlochen. Defendant's reference to a "rescission" mischaracterizes this as a unilateral administrative right, when in fact a contract had already been formed. Defendant's action amounts to a wrongful expulsion without due process or justification.

35.     Defendant's actions not only harm Student Doe but also send a chilling message to other families of students with disabilities—that asserting legally protected rights may result in educational exclusion. This systemic harm reinforces the public interest in issuing immediate injunctive relief.

36.     Plaintiff Parent Doe filed the OCR complaint after Interlochen failed to take appropriate action during a critical safety and medical situation involving Student Doe's roommate. The roommate had previously been placed on suicide probation but was returned to the shared dorm room, where she disclosed to Student Doe that she remained suicidal and had resumed cutting.

37.     Student Doe reported these disclosures to school staff. Rather than take protective measures, Defendant Michael Kern wrote to Parent Doe that it was Student Doe's "job" to stay in the dorm room and report on the roommate's mental health status to adults. This directive placed an inappropriate and psychologically harmful burden on Student Doe, a minor with diagnosed disabilities who has no medical degree or training.

8

38.    Student Doe's licensed physicians wrote directly to Interlochen on two separate occasions, stating that Student Doe must not be made responsible for monitoring a suicidal peer and required a private dorm room for her safety.

39.    Despite this professional medical recommendation, Interlochen staff Camille Colatosti, Michael Kern, and Megan Walton all refused to move Student Doe to a safe dorm room. With no viable internal remedy remaining, Plaintiff Parent Doe filed a formal complaint with the U.S. Department of Education's Office for Civil Rights on March 31, 2025, and supplemented it on April 8, 2025.  Only after the OCR complaint was filed did Interlochen relocate Student Doe to a single room, on April 2 and 3, 2025.

40.    During this time, however, Camille Colatosti also instructed Parent Doe "you need to leave campus," blocked her from communicating with staff (including medical personnel), and failed to diagnose Student Doe's worsening illness on April 4, 2025 — which was later confirmed by urgent care as strep throat and double ear infection. Parent Doe was then forced to take Student Doe to off-campus doctors from April 4 – 10, 2025, to prevent further harm from Interlochen's denial of medical care.

41.  In the midst of these events, on April 9, 2025, Interlochen issued a letter via email to Parent Doe "rescinding" Student Doe's enrollment for the upcoming year.

42.    The timing, language, and context of this action strongly support Plaintiffs' claims of retaliation for protected advocacy and failure to accommodate under federal law.

43.    Despite multiple requests. Defendant Interlochen has never identified what alleged "behavior" by Parent Doe formed the basis for rescinding Student Doe's enrollment.

44.    The only communication that Interlochen appears to rely on is a March 28, 2025, email exchange in which Parent Doe raised urgent concerns about Student Doe's dorm assignment with a roommate who had recently been placed on "leave" by Interlochen for suicidality. This roommate had disclosed to Student Doe that the roommate was continuing to experience suicidal thoughts, cutting behaviors, and was lying to her therapist.

45.    In the March 28 email, Parent Doe wrote, after Interlochen continued to deny safe housing to Student Doe: "Please confirm in writing that you intend to house my [child] with a peer who has disclosed current suicidal thoughts and cutting, despite [their] physician's warning that this environment will harm [their] mental health." In her response, Camille Colatosti characterized Parent Doe's safety concern as a "threat," even though the original message clearly stated factual observations, referred to medical and child welfare obligations, and asked for a written response to prevent foreseeable harm to a disabled minor. Parent Doe's language was assertive, appropriate, and reflected the legal and ethical responsibility to advocate for one's own child's safety and access, as well as for the safety of the suicidal roommate. Parent Doe never wrote any "threat" to anyone. On the contrary, Parent Doe was worried about the threat to Student Doe being housed with a violent roommate, and Interlochen refused to intervene or protect Student Doe. Instead, Interlochen assigned Student Doe the "job" of monitoring the suicidal roommate.

46.    At no time did Interlochen initiate any formal disciplinary process, submit a warning or behavioral contract, or raise specific allegations regarding any misconduct by Parent Doe or Student Doe. Student Doe has a 4.0 grade point average, is a member of the highest honor roll at Interlochen and has remained in good academic and behavioral standing throughout

the year. Parent Doe has advocated for Student Doe throughout the year. The school's vague reference to "parental behavior" is therefore a post hoc rationalization for what is clearly retaliation after Parent Doe filed a federal civil rights complaint and documented medical safety failures.

47.    What's more – earlier in the school year, in October 2024, Student Doe was housed in a suite where inappropriate and sexually explicit conduct regularly occurred between other minor children in the suite. One of the suitemates exposed their genitals to Student Doe and solicited Student Doe to join in the sexual activities involving multiple students, which Student Doe refused. Student Doe and Parent Doe reported this to school authorities. Parent Doe engaged in weeks of advocacy to request a housing change. Interlochen ultimately moved Student Doe to a different room, but at no point during that period did the school suggest that Parent Doe's communication was inappropriate or grounds for removal.

48.    Instead, during the time, Interlochen offered Student Doe admission to an even more competitive major for the 2025-2026 year, and Student Doe accepted.

49.    The prior housing advocacy incident underscores that Parent Doe's advocacy style has been consistent, and the school's current claim that "parent behavior" justifies rescinding enrollment appears to be pretextual, arising only after federal civil rights complaints were filed.

50.    Defendant's letter cited the "best interest of the Interlochen community" as justification for excluding a student whose only distinguishing factor was a parent who reported Section 504 violations in an OCR complaint after her child was tasked with a "job" of caring for

a suicidal roommate, and having her own accommodations denied. This language—framing legal compliance as a community disruption—reflects a reputational motive inconsistent with disability law and supports a finding of retaliatory pretext.

51.     As a result of Defendant's actions, Student Doe has experienced sleep disruption, increased panic attacks, and expressed fear of being punished for her disabilities.

52.     Parent Doe has incurred out-of-pocket medical costs, including over $2900 for urgent care and medical costs, as well as nonrefundable deposits and travel expenses for the housing difficulties.

53.     As of April 2025, all comparable arts high schools and private boarding programs have closed their admissions for the 2025–2026 school year. Waitlists are full, financial aid deadlines have passed, and many programs no longer have housing or class space available. Interlochen knows this.

54.     Student Doe has no other realistic school option for the upcoming year, making the loss of her Interlochen placement uniquely devastating and educationally disruptive.

55.     On April 1, 2025 – the day after Parent Doe filed the first OCR complaint on March 31, 2025 – Interlochen sent Student Doe an email stating that Student Doe's financial aid for the 2025–2026 academic year had increased. Student Doe, who has documented anxiety and has been reliant on financial aid to remain enrolled, was initially thrilled and very grateful. Several hours later, however, the Does were informed by Interlochen that the message was an "April Fools" joke. This cruel and inappropriate communication caused significant distress, reinforcing the pattern of disregard for her safety. This interaction undermines Defendant's later

claim that Parent Doe was in any way disruptive; as of April 1, 2025, Interlochen was still

corresponding with the Does in a way that presumed continuing enrollment.


## CAUSES OF ACTION

### Count I – Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

56.     Plaintiffs re-allege all prior paragraphs.

57.     Defendant denied Student Doe the benefit of educational access by failing to

implement double-time and sensory accommodations that had been approved by outside testing

agencies and ordered by her doctor, including during SAT testing in March 2025.

58.     On April 8, 2025 -- day before the anticipatory repudiation -- in email, Camille

Colatosti attempted to unilaterally implement a revised 504 plan that conditioned Student Doe's

access to legally mandated accommodations on her academic performance—specifically,

allowing accommodations only if Student Doe's grade in a class dropped below 75%. This

policy is in direct violation of federal disability law, which mandates that accommodations must

provide equal access, not "fail first" or be triggered by a student's failure to perform without

them. Plaintiff Parent Doe objected to this policy, which reflects the administration's lack of

understanding of Section 504 obligations and their broader effort to limit accommodations rather

than support disabled students.  In response to Parent Doe's objection to the diminished 504

Plan, on April 8, 2025, Camille Colatosti replied, "then so be it."  She and Trey Devey then

attempted the very next day to repudiate the 2025-2026 contract, instead of engaging in any

collaborative 504 discussions as required by Section 504 and OCR Regulations.

59.      Defendant is a recipient of federal financial assistance.

60.    Defendant denied Student Doe the benefit of education on the basis of disability and retaliated against protected advocacy.  *See Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997) (Disability-based hostility or failure to accommodate can constitute intentional discrimination under the ADA); *Doe v. Woodford Cnty. Bd. of Educ., 213 F.3d 921 (6th Cir. 2000) (unpublished)* (Schools have an affirmative duty under Section 504 to provide reasonable accommodations and cannot disregard medical or psychological recommendations).

**Count II – Violation of the Americans with Disabilities Act (42 U.S.C. § 12182)**

61.    Defendant is a place of public accommodation and subject to Title III.

62.    Defendant discriminated against Student Doe by excluding her on the basis of disability and retaliating against her parent's advocacy.

63.    Filing a complaint with OCR constitutes a protected activity under both the ADA and Section 504. *See C.S. v. S. Madison Cmty. Sch. Corp.*, 799 F. App'x 391, 395 (6th Cir. 2020).

64.    Defendant's adverse action—"rescission" of enrollment— occurred the very next day and referred to Parent Doe's report of safety concerns to legal authorities as a "threat" to the school, just as they had alleged days prior that safety reports were a "threat" to Interlochen. Expulsion of Student Doe for this therefore satisfies the causal nexus required for a retaliation claim.  Student Doe is being expelled because Parent Doe reported Interlochen to OCR.  That is illegal.

**Count III – Retaliation under ADA and Section 504**

14

65.    Defendant's anticipatory repudiation of Student Doe's enrollment followed immediately after protected activity, the OCR complaint by Parent Doe.

66.    This constitutes retaliation in violation of both statutes. *C.S. v. S. Madison Cmty. Sch. Corp.*, 799 F. App'x 391, 395 (6th Cir. 2020) (Reinforces the three-part test for retaliation: protected activity, adverse action, and causal connection.)

67.    Defendant's response to Parent Doe's OCR complaint, and its refusal to implement systemic compliance with Section 504 or ADA Title III, evidences a deliberate institutional disregard for federal disability law.

68.    The language used in its "rescission" letter—referring to "the entire Interlochen community"—demonstrates that **Interlochen views disability rights compliance not as a legal duty, but as a disruption to its preferred culture or operations**.


69.    At no point did Plaintiff Parent Doe engage in threatening, abusive, or disruptive conduct. To the extent her tone reflected stress or urgency, it arose from her good-faith efforts to secure legally required accommodations for a disabled child. Retaliating against advocacy, or conflating anxiety with misconduct, reflects a profound misunderstanding of the ADA, Section 504, and the realities of parenting a child with disabilities. *See R.K. v. Bd. of Educ. of Scott Cnty., Ky.*, 494 F. App'x 589, 593 (6th Cir. 2012) (Holding that parents who advocate for accommodations for their disabled children are protected from retaliation under the ADA and Section 504.)


**Count IV – Breach of Contract**

70.    Defendant entered into a binding enrollment agreement with Plaintiffs for the 2025–26 school year.  On January 15, 2025, Interlochen emailed Parent Doe confirming acceptance of Student Doe's enrollment.  By February 1, 2025, Parent Doe had accepted the offer for re-enrollment, submitted all required paperwork, requested a deposit payment link and amount, and submitted financial aid materials. The school acknowledged receipt. These actions formed a valid and binding contract under Michigan law.

71.    On April 9, 2025, Defendant Interlochen clearly and unequivocally stated that it would not honor Student Doe's accepted enrollment for the 2025–26 academic year.

72.    Defendants committed a breach of contract by anticipatorily repudiating ("rescinding") Student Doe's enrollment for the 2025–2026 academic year after Parent Doe had accepted the offer, submitted required documentation, was submitting required documentation to the financial aid office, requested a deposit amount, and was prepared for performance.

73.    Defendant's April 9, 2025, communication constituted an anticipatory repudiation of the parties' agreement, as it reflected a clear, unequivocal refusal to perform its contractual obligation to provide educational services for the coming academic year. *See Allied Mech. Servs., Inc. v. Nationwide Mech. Contractors Corp.*, 695 F. Supp. 487, 490 (W.D. Mich. 1987); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 250.

74.    At no point did Interlochen issue a behavioral warning, initiate a conduct review, or provide written notice of any alleged misconduct by Student Doe or Parent Doe.  Instead, Interlochen referred to Parent Doe's legal concerns as "threatening" to Interlochen.  No hearing or appeal process was ever offered. The school's internal policies require notice, process, and review for significant enrollment decisions—none of which were followed here.

75.    Defendant failed to initiate any formal behavioral or disciplinary process. No hearing was offered. No documentation was shared. No conduct policy violation was cited. The "rescission" occurred outside of any procedures described in the Student Handbook or any law.

76.    Defendant has breached this agreement without just cause, harming Plaintiffs.

77.    Parent Doe accepted Interlochen's enrollment offer for the 2025–2026 academic year, thereby forming a valid and enforceable contract for educational services.

78.    Defendant breached that contract by unilaterally "rescinding" Student Doe's enrollment after acceptance, without proper cause or due process, and in direct response to protected advocacy activity. *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972) (Once a student has a legitimate claim of entitlement, that interest cannot be taken away without due process.)

79.    As a result of Defendant's breach, Plaintiffs have suffered educational disruption, emotional distress, and financial loss.


## Count V – Intentional Infliction of Emotional Distress (IIED)

80.    Defendant's conduct was extreme and outrageous, and caused severe emotional distress to both Plaintiffs. *See Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (Extreme and outrageous conduct includes exploitation of vulnerable individuals where emotional harm is foreseeable).


## Count VI – Negligent Infliction of Emotional Distress (NIED)

81.    Defendant breached a duty of care, resulting in foreseeable harm to a vulnerable student.

## Count VII – Medical Negligence

82.    Defendant failed to follow or implement documented medical accommodations, causing harm to Student Doe. *See Locke v. Pachtman*, 521 N.W.2d 786 (Mich. 1994) *(*Medical negligence includes failure to follow professional judgment in providing care to known conditions*)*.

83.    Defendant's inaction and retaliation compounded her sensory and emotional regulation needs.


## REQUEST FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION

84.    Plaintiffs request a Temporary Restraining Order and Preliminary Injunction under Fed. R. Civ. P. 65, to prevent irreparable harm and protect Student Doe's access to education. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (Sets the modern standard for injunctive relief: likelihood of success, irreparable harm, balance of equities, and public interest.) *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2002)* (Reaffirms Winter's four-factor test in the Sixth Circuit context.)

85.    Student Doe faces ongoing educational, emotional, and medical harm without immediate relief.

86.    Plaintiffs are likely to succeed on the merits, will suffer greater harm than Defendant, and the public interest favors protection of disability rights.

87.    Defendant acted with actual knowledge that its decision would cause emotional distress, as evidenced by its written admission that the decision would be "upsetting."

88.    Despite this knowledge, Defendant took this action abruptly, without prior warning, while Student Doe was off-campus for medical treatment, and directly after Parent

Doe's civil rights complaint, further demonstrating a willful and reckless disregard for the emotional well-being of a vulnerable minor.

89.    Defendant's conduct threatens not only Student Doe's access to education but also chills advocacy by other families of disabled students. Permitting retaliation in this form risks deterring the very protections that Section 504 and the ADA were enacted to guarantee.

90.    Interlochen's conduct toward Student Doe—particularly the April 1 "financial aid increase" email sent as an April Fools joke—reflects a pattern not just of legal noncompliance but of callousness. The school knew Student Doe's financial aid status was central to her ability to remain enrolled, and that she lives with anxiety. Using that vulnerability as a source of humor reveals an institutional culture that disregards the emotional safety of the very students it claims to serve.

91.    There is no "backup option." By removing Student Doe now, after admissions deadlines have passed, Defendant has effectively excluded her from the 2025–26 academic year entirely. This is not a delay or relocation; it is educational erasure.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a.  Grant a Temporary Restraining Order and Preliminary Injunction, reinstating Student Doe's enrollment for the 2025–2026 academic year, as an order reinstating enrollment is the only remedy that prevents exclusion from education for the entire 2025–2026 academic year, given that all comparable institutions have closed admissions.

b.  Award compensatory and punitive damages exceeding $75,000;

19

c.  Award attorneys' fees and costs if counsel enters for trial;

d.  Grant any other relief deemed just and proper;

e.  Plaintiffs also seek declaratory relief confirming that Defendant's actions violated

Section 504 and the ADA and that Plaintiff retains the right to advocate without

retaliation.

RESPECTFULLY submitted this 11th day of April, 2025.

s/ Emily Cohen
Emily Cohen
P.O. Box 711
Tiffin, IA 52340
Telephone: (319) 541-4577
Email: emilyecohen@icloud.com
Plaintiff, *pro se*

**Jury Trial Demanded**

20

CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, I filed the foregoing with the Clerk of the Court and will send notification of such filing via personal service to the following persons:

Interlochen Center for the Arts

_____/s/ Emily Cohen_____
Emily Cohen