UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMILY COHEN,

       Plaintiff,                                      Hon. Paul L. Maloney

v.                                                  Case No. 1:25-cv-400

INTERLOCHEN CENTER
FOR THE ARTS,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Emily Cohen, proceeding pro se and under the pseudonym Parent Doe, filed a complaint on April 11, 2025, for herself and her minor child, identified as Student Doe, against Defendant Interlochen Center for the Arts (ICA) alleging various claims under federal and state law. Cohen alleged that Student Doe was currently enrolled at ICA and that Cohen had previously accepted ICA's re-enrollment offer for the following year, but ICA had rescinded Student Doe's enrollment after Cohen filed a formal complaint with the U.S. Department of Education's Office for Civil Rights. (ECF No. 1 at PageID.2, 4–5.) Along with her complaint, Cohen filed a motion for a temporary restraining order, which the Court denied in an Opinion and Order on May 19, 2025, finding that Cohen failed to show immediate and irreparable harm because an ICA representative had offered to allow Student Doe to return to the school and complete the semester, and ICA's alleged recission of the 2025–2026 school year admission would not take effect until at least the end of the current academic year. (ECF No. 16 at PageID.79.)

Shortly after Cohen initiated this action, the Court issued an order directing Cohen—who is not an attorney—to show cause indicating how she could proceed in representing her minor

child. (ECF No. 36.) After Cohen responded, the Court directed her to either retain counsel or file an amended complaint on behalf of only herself. (ECF No. 11 at PageID.63.) Cohen chose the latter option and filed an amended complaint on May 16, 2025, which omitted Student Doe. (ECF No. 13.)

Presently before me is ICA's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 19.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion and dismiss Cohen's complaint with prejudice.

## I. Background

Cohen invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331 through claims under the Americans with Disabilities Act (ADA), as well as its diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) for state-law claims. (ECF No. 13 at PageID.68–69.) She asserts claims of retaliation and associational discrimination under the ADA (Counts II and III) and state-law claims of breach of contract and intentional infliction of emotional distress (IIED) (Counts I and IV). (*Id.* at PageID.71–72.)

Cohen alleges that in June 2024, she entered into an agreement (Enrollment Agreement) with ICA to enroll Student Doe as a full-time boarding student for the 2024-2025 academic year. She alleges that Student Doe is a qualified individual with disabilities under the ADA and Section 504 of the Rehabilitation Act of 1973 based on diagnoses of level-one autism, attention deficit hyperactivity disorder, and anxiety. Cohen alleges that during the course of the 2024-2025 academic year, she advocated on Student Doe's behalf for accommodations, including extended time, quiet space, proctoring, and other "support accommodations previously endorsed by a public school [individual education plan]." (*Id.* at PageID.69.) Nonetheless, ICA failed to provide consistent accommodations as follows:

2

- Teachers in multiple classes failed to provide required testing accommodations.
- Proctoring support was denied or delayed, with the science teacher demanding that Student Doe test alone with him while he sexually harassed her.
- Student Doe was penalized for disability-related absences excused by physician notes.
- Faculty and administration refused to engage meaningfully with requests for support.

(*Id.*)

Cohen further alleges that when she demanded compliance with disability law, ICA retaliated by denying Student Doe re-enrollment for the following year; offering to award Student Doe the A grades she earned if, and only if, she left the school permanently; reducing her grades from As to Fs; mismanaging standardized testing accommodations (ACT and SAT); and falsely reporting to the Court about communication efforts. (*Id.* at PageID.70.) Cohen also claims that ICA refused to submit disability documentation for the SAT, causing the College Board to deny accommodations the ACT has approved, and mismanaged the ACT, resulting in Student Doe receiving no composite score. (*Id.*)

## II. Analysis

### A.   Standing

ICA contends that Cohen's claims are subject to dismissal because even though she has dropped Student Doe from the amended complaint, she lacks Article III standing because her claims continue to rely in large part on harm to Student Doe rather than harm to Cohen.[1] "[F]ederal courts are courts of limited jurisdiction with only such jurisdiction as is defined by the Constitution

---

[1] ICA brings its motion solely under Federal Rule of Civil Procedure 12(b)(6), but its standing argument should have been brought pursuant to Rule 12(b)(1) for lack of jurisdiction. *See Crookston v. Johnson*, 370 F. Supp. 3d 804, 807 (W.D. Mich. 2018) ("Whether a party has Article III standing is properly an issue of a court's subject matter jurisdiction under Rule 12(b)(1)." (citing *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017)). This defect does not preclude consideration of the issue, however, as Article III standing concerns a federal court's subject matter jurisdiction, which a court may raise *sua sponte*. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007) (citing *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 199 (2d Cir. 2005)).

and granted by Congress." *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001) (internal quotations and citation omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Article III of the Constitution limits the "judicial Power" of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. Standing is one component of Article III jurisdiction. If a plaintiff lacks Article III standing, the court has no subject matter jurisdiction to hear the claim. *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015); *Central States*, 433 F.3d at 198 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The test for Article III standing is well known. To be entitled to sue in federal court, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). An injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). The alleged harm "'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).

Notwithstanding Student Doe's absence from the amended complaint, Cohen's allegations generally assert harm to Student Doe, not to Cohen. For example, Student Doe, not Cohen, suffered harm due to ICA's failures to provide accommodations; to award Student Doe the grades she earned; and to properly manage standardized testing accommodations for the ACT and SAT, and due to its acts of refusing to submit disability documentation for the ACT, mismanaging the ACT,

and placing Student Doe in a housing unit with a suicidal peer. Cohen has no legal right to assert these harms to her child as harms to herself. Likewise, Cohen's requested relief of an injunction ordering ICA to re-enroll Student Doe for the 2025-2026 academic year addresses a harm to Student Doe that Cohen may not assert.

Cohen fails to offer a persuasive argument in support of her standing in this case. While she argues that the amended complaint clearly asserts claims for harms that she personally suffered, her allegations, as set forth above, all relate to Student Doe. *See Sanders v. Palmer*, No. 09-10847, 2010 WL 1286473, at *4 (E.D. Mich. Mar. 31, 2010) (noting that the plaintiffs lacked standing to assert violations of their children's constitutional rights because "'parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative" (quoting *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002)). Thus, I recommend that the amended complaint be dismissed for lack of standing.

### B.     Failure to State a Claim

Alternatively, I recommend that the complaint be dismissed for failure to state a claim. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted). As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

When evaluating a complaint under Rule 12(b)(6), a court may consider the complaint and documents attached to the motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). Where the claims rely on the existence of a written agreement, and the plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003).

Before turning to the claims, I address two issues concerning Cohen's response to ICA's motion. First, in her response, Cohen relies on facts that are not asserted in the amended complaint, which is improper in response to a motion to dismiss. It is well established that in deciding a Rule 12(b)(6) motion, a court is generally limited to the sufficiency of the pleading's allegations, in this case, Cohen's amended complaint. *See Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470,

483 (6th Cir. 2020) (noting that "it is black-letter law that . . . a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings"); *Johnson v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 502 F. App'x 523, 541 (6th Cir. 2012) ("Although Plaintiffs' response to the motion to dismiss expanded their disparate impact claims, the district court was limited, as are we, to the facts and legal claims as raised in the pleadings."). Moreover, it is well-established that a pleading may not be amended in a response brief. *Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003). Thus, Cohen's factual statements in her response that are not set forth in the amended complaint will be disregarded.

Second, at several points in her response, Cohen speculates about what "[d]iscovery will reveal." (ECF No. 20 at PageID.121, 123.) At this juncture, however, discovery is not relevant. *See Iqbal*, 556 U.S. at 686 (noting that unless the plaintiff's pleading can survive a motion to dismiss, the plaintiff "is not entitled to discovery, cabined or otherwise"). As the Sixth Circuit has observed, a plaintiff "may not use the discovery process to obtain . . . facts" needed to state a claim after filing suit. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). Thus, discovery is permissible only if Cohen first asserts a plausible claim in her amended complaint.

### 1.    Breach of Contract

In Count I, Cohen alleges that she and ICA entered into a valid and enforceable contract for tuition and services and ICA breached the contract by: (1) failing to provide agreed-upon accommodations; (2) retaliating against Cohen and Student Doe; (3) denying Student Doe re-enrollment without cause or process; and (4) offering coerced grade manipulation to avoid litigation. (ECF No. 13 at PageID.71.) To establish a claim for breach of contract, a plaintiff must

show: (1) the existence of a valid and enforceable contract between the parties; (2) the terms of the contract; (3) that the defendant breached the contract; and (4) that the plaintiff suffered an injury as a result of the breach. *Timmis v. Sulzer Intermedics, Inc.*, 157 F. Supp. 2d 775, 777 (E.D. Mich. 2001) (citing *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999)). ICA contends that Cohen fails to allege a plausible breach of contract claim because: (1) she cannot point to any contractual term that ICA breached as she alleges; (2) Cohen never entered into a contract for enrollment for the 2025-2026 school year, and ICA was permitted to decline re-enrollment under the parties' existing agreement; and (3) Cohen's re-enrollment claim is barred by Michigan's statute of frauds. (ECF No. 19 at PageID.95.)

Cohen does not allege in her amended complaint that she entered into an enrollment contract for the 2025-2026 academic year. Rather, she alleges that in June 2024, she entered into an enrollment contract with ICA "for the academic year." (ECF No. 13 at PageID.69.) In Count I, Cohen alleges that ICA breached the agreement by denying re-enrollment. (*Id.* at PageID.71.) In her response regarding the breach of contract claim, Cohen asserts that: (1) she "entered into a written enrollment contract for the 2024-2025 academic year and paid tuition all year"; (2) ICA's "denial of accommodations, repudiation of the written agreement to enroll, and other retaliatory conduct breached this agreement"; (3) "[t]he statute of frauds does not bar this claim because . . . [a] written contract exists for 2024-2025 . . . [and] [t]he claim relates to breach of existing contractual duties, not formation of a future contract." (ECF No. 20 at PageID.120.) Because only the 2024-2025 enrollment agreement is at issue, I address only ICA's first argument.[2]

---

[2] In her sur-reply, Cohen argues that ICA falsely asserts in its reply that Cohen admitted in her response that she has no contract for the 2025-2026 year. While it is accurate that Cohen did not admit that no such contract existed, her own allegations in her amended complaint and statements in her response show that only the 2024-2025 agreement is at issue. Moreover, as explained below,

In support of its argument, ICA has submitted the 2024-2025 Enrollment Agreement between the parties. (ECF No. 19-1.) ICA argues that, as for Cohen's allegations regarding accommodations and grade manipulation, no provision of the Enrollment Agreement addresses or restricts ICA's discretion regarding these issues. ICA further contends that the Enrollment Agreement does not mention retaliation.[3] In response, Cohen simply reiterates her amended complaint allegations but fails to point out any provision of the Enrollment Agreement supporting the claimed breaches by ICA. Therefore, Cohen fails to assert a plausible breach of contract claim as to these allegations.

Regarding Cohen's allegation that ICA breached the Enrollment Agreement by denying re-enrollment for the 2025-2026 academic year, the Enrollment Agreement contains two pertinent provisions. The first, titled "Parent Cooperation," provides, in relevant part:

> A positive and constructive relationship between the Academy and Parents or other individuals interacting with the Academy and/or Academy community by virtue of their relationship with the Student is essential to the mission of the Academy. Thus, if the behavior, communication, or interaction on-campus, off-campus (including during Academy-sponsored events), or digital or electronic communications of Parents or other individuals interacting with the Academy and/or Academy community by virtue of their relationship with the Student is disruptive, intimidating, overly aggressive, or reflects a loss of confidence or serious disagreement with the Academy and its affiliated entities' personnel, including but not limited to disagreement with its policies, procedures, responsibilities, delivery of the program, strategic initiatives, personnel, leadership or standards, or imperils accomplishment of its educational purpose or program, threatens the health, safety, or well-being of another member of the community, or inconsistent with commitments shared by members of the community, Parents understand and agree that the Academy has the right to dismiss the Student from the Academy, the

---

under the 2024-2025 Enrollment Agreement, which automatically renewed on an annual basis (ECF No. 19-1 at PageID.107), ICA had the sole right to decline re-enrollment.

[3] ICA further notes that the Enrollment Agreement contains a merger and integration clause and provides that it may not be altered, amended, or modified except in writing and signed by the Vice President of Enrollment Management and Marketing or the Executive Dean of Admission and the Parent. (ECF No. 19-1 at PageID.113.)

> Academy property or property leased by the Academy, an Academy event, or other such restriction or action as determined in the Academy's sole discretion. . . .

(*Id.* at PageID.109–10.) The second, titled "Admission and Re-Enrollment," provides in relevant part:

> For returning students, successful completion of the academic year shall be determined in the sole and exclusive discretion of the Academy and is dependent in part, but not exclusively, upon the Student's school progress, general citizenship and other factors that may impact and/or affect the Academy and/or the Student. The Academy is not required to provide notification in advance of the denial of re-enrollment, and it is expressly agreed that, regardless of when the Parents are informed of the denial of re-enrollment, it shall neither be a breach of this Agreement nor a basis for re-enrollment.

(*Id.* at PageID.108–09.)

These provisions make clear that ICA has the sole right to dismiss a student at any time due to parental comments or behavior toward the school and its staff, as well as the sole right to decline re-enrollment, with or without notice to the parent, based on the student's school progress and other factors that may impact the school and the student. Cohen simply alleges that ICA exercised its contractual right to decline re-enrollment, which is not a breach. Thus, she also fails to allege a valid breach of contract claim based on ICA's decision not to enroll Student Doe for the 2025-2026 academic year.

### 2. ADA Retaliation

In Count II, Cohen claims that ICA retaliated against her in violation of the ADA. To state a prima facie case for retaliation under the ADA, the plaintiff must allege that: (1) she engaged in protected activity; (2) the defendant knew of the protected activity; (3) the defendant thereafter took an adverse action against the plaintiff; and (4) a causal link exists between the plaintiff's protected activity and the adverse action. *Clark v. City of Dublin*, 178 F. App'x 522, 525 (6th Cir.

10

2006) (citing *Kuriatnyk v. Township of Bazetta*, 93 F. App'x 683, 686 (6th Cir. 2004); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

Although Cohen arguably alleges the first and second elements of her claim, she fails sufficiently allege that ICA took an adverse action against her. As noted above, almost all of the alleged retaliatory acts were directed against Student Doe, not Cohen. Although she alleges in Count II that IAC "took adverse actions against her and her daughter" (ECF No. 13 at PageID.71), the only actions she alleges are "denial of services," which pertains to Student Doe, and "coercion, exclusion, and reputational harm." These allegations, however, are nothing more than "labels and conclusions," *Twombly*, 550 U.S. at 555, that fail to raise Cohen's "right to relief above the speculative level on the assumption that all the allegations in the [amended] complaint are true (even if doubtful in fact)." *Id.* at 555–56 (citations and footnote omitted). More specifically, Cohen alleges no fact indicating what "coercion, exclusion, and reputational harm" entailed and why it was adverse.

Similarly, Cohen fails to allege sufficient facts plausibly to allege the requisite causal connection. *See Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004) (observing that conclusory allegations of retaliatory motive are insufficient to allege a retaliation claim). In her response, Cohen cites two emails that ICA's Provost sent to one of ICA's attorneys in this case seeking legal advice that were inadvertently sent to Cohen, which Cohen argues are proof of a causal connection for her retaliation claim. (ECF No. 20 at PageID.119–20 (quoting ECF Nos. 8-1 and 8-2).) Contrary to Cohen's assertion, the Provost's emails seeking legal advice in response

11

to Cohen's communications to ICA's staff and administration are not evidence of a causal connection between Cohen's alleged protected activity and any alleged adverse action.[4]

### 3. Associational Discrimination

In Count III, Cohen alleges a claim of associational discrimination under Title III of the ADA. The ADA prohibits discrimination on the basis of disability, including discrimination against a non-disabled person "because of the known disability of an individual with whom the individual . . . is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E). Title III of the ADA "prohibits discrimination on the basis of disability in public accommodations operated by private entities." *Sandison v. Michigan High Sch. Athl. Ass'n, Inc.*, 64 F.3d 1026, 1036 (6th Cir. 1995). Cohen alleges that she "was treated adversely due to her known association with Student Doe, a disabled individual," and that such treatment included "refusal to communicate through counsel, direct exclusion from advocacy, and retaliatory exclusion." (ECF No. 13 at PageID.72.)

ICA contends that this claim is subject to dismissal because Cohen's allegations fail plausibly to allege that she was discriminated against based upon her association with Student Doe, and she fails to allege an injury that supports an associational discrimination claim under Title III of the ADA. (ECF No. 19 at PageID.101–02.)

Although I agree with ICA's contentions, particularly because Cohen's allegations are nothing more than labels and conclusions that fail to allege facts showing an ADA-related injury, her discrimination claim is subject to dismissal for a more fundamental reason. That is, injunctive relief is the only available remedy under Title III of the ADA. *See E.F. by Fry v. Napoleon Cmty.*

---

[4] Defense counsel notified Cohen of the inadvertent disclosure of the privileged communications and requested that Cohen return or destroy them, but she refused to do so. (ECF No. 21-1 at PageID.138–40.)

*Schs.*, No. 12-1507, 2019 WL 4670738 at *8 (E.D. Mich. Sept. 25, 2019) ("A private plaintiff suing under Title III of the ADA can obtain injunctive relief, but not compensatory damages.") (citing 42 U.S.C. § 12188; 28 C.F.R. § 36.504); *see also Abeyta v. Stonecrest Med. Ctr.*, No. 3:18-CV-0386, 2018 WL 3472820, at *3 (M.D. Tenn. July 18, 2018) (Title III authorizes only injunctive relief, not monetary damages, to successful plaintiffs). Here, the only injunctive relief Cohen seeks is "[r]e-enrollment and academic reinstatement of Student Doe." (ECF No. 13 at PageID.73.) Cohen does not seek injunctive relief for herself. Moreover, at this point, any request for injunctive relief would be moot because Student Doe is no longer enrolled at ICA and, thus, there is basis to enjoin any future associational discrimination against Cohen. *Cf. Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2014) (explaining that in order to establish a threat of future injury in the context of a Title III ADA claim for injunctive relief, the plaintiff must establish "a plausible intent to return to the noncompliant accommodation"). Therefore, this claim should be dismissed.

    **4.**    **IIED Claim**

Cohen's final claim is that ICA committed IIED when it "knowingly placed Student Doe in dangerous living conditions, including housing her with a known suicidal peer"; "told [Cohen] it was Student Doe's 'job' to monitor her roommate's mental health and report her roommate's health updates to [ICA] staff'"; and "failed to provide mental health support despite obvious signs of distress." (*Id.* at PageID.72.) This claim fails because it is based solely on conduct toward Student Doe rather than Cohen.

Moreover, even if Cohen could establish some injury from these allegations, she fails to state a valid IIED claim. To establish this claim, Cohen must allege the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional

13

distress. *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 824–25 (6th Cir. 2012) (citing *Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296, 321 (2010)). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603 (1985) (quoting Restatement (Second) of Torts § 46 cmt. d (1948)). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v. Mills*, 212 Mich. App. 73, 91 (1995) (citing *Linebaugh v. Sheraton Mich. Corp.*, 198 Mich. App. 335, 342 (1993)). The acts of which Cohen complains—placing Student Doe with a roommate who had thoughts of self-harm and telling Student Doe to contact staff if the roommate had issues—do not meet the high threshold of conduct to support an IIED claim. *See VanVorous v. Burmeister*, 262 Mich. App. 467, 481 (2004), *abrogated on other grounds by Odom v. Wayne Cnty.*, 482 Mich. 459 (2008) ("The threshold for showing extreme and outrageous conduct is high. No cause of action will necessarily lie even where a defendant acts with tortious or even criminal intent."). They are neither extreme in degree nor outrageous. Therefore, Cohen fails to state an IIED claim.

### III. Conclusion

For the reasons set forth above, I recommend that the Court **grant** ICA's Motion to Dismiss (ECF No. 19) and dismiss this action **with prejudice**.

Dated: August 27, 2025                                    /s/ Sally J. Berens
                                                                                           SALLY J. BERENS
                                                                                           U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).